MICHAEL REED, Plaintiff-Appellant, v. NORTHWESTERN PUBLISHING COMPANY, d/b/a The Commercial News, et al., Defendants-Appellees.

Fourth District   No. 4—86—0757

Opinion filed August 24, 1987.

Richard B. Opsahl and Craig R. Hunt, both of Rantoul, for appellant.

Acton, Meyer, Smith & Miller, of Danville, and Nixon, Hargrave, Devans & Doyle, of Rochester, New York (Thomas B. Meyer and William S. Brandt, of counsel), for appellees.

JUSTICE SCOTT delivered the opinion of the court:

The plaintiff (Reed) brought this action for libel against the Northwestern Publishing Company, publisher of The Commercial News, a newspaper in Danville, and two of its reporters, Bob Wilson and Carl Young. Reed alleged in his complaint that Wilson and Young were the authors of some defamatory material concerning Reed which appeared in The Commercial News.

The trial court initially entered a summary judgment order in favor of defendants on June 29, 1983, and denied plaintiff's motion to vacate the order. Plaintiff's appeal to the Fourth District Appellate Court resulted in reversal of the summary judgment order (Reed v. Northwestern Publishing Co. (1984), 129 Ill. App. 3d 133, 471 N.E.2d 1071). On remand, a jury trial was had on the matter which resulted in a judgment for the defendants The Commercial News and Bob Wilson. Defendant Carl Young was dismissed at the close of the plaintiff's case upon a motion for directed verdict.

Plaintiff then filed a post-trial motion which was denied and, thus, appeals the directed verdict in favor of Carl Young, and the judgment in favor of Bob Wilson and The Commercial News.

The facts of this case have been thoroughly set forth by this court in plaintiff's prior appeal of the trial court's summary judgment order (Reed v. Northwestern Publishing Co. (1984), 129 Ill. App. 3d 133, 471 N.E.2d 1071). Therefore, we will briefly summarize the pertinent facts.

The newspaper articles of which plaintiff complains stemmed from a grand jury investigation of burglaries and thefts allegedly committed by several members of the Danville police department during 1970 and 1971. Testimony on this subject was presented to a grand jury in several sessions in 1977 and 1978, and a seven-page report summarizing the testimony and the current grand jury's findings was released to the public on December 20, 1978. On the following day, The Commercial News published photographs and two articles relating to the investigation and report. The caption "Current Officers Implicated in Report" appeared under photographs of the plaintiff and of two other members of the Danville police department and of a county deputy sheriff. A caption appearing below the

above caption stated "Four current law officers—Arnold Yanders, Robert Testa, Michael Reed and Kenneth Cox—were named by grand jury witnesses as joining in at least one or a few of the reported break-ins by policemen." In an article titled "Grand Jury Describes Police Burglary Setup," Bob Wilson referred to the involvement of two officers in several burglaries and then wrote:

> "Massey, Roland and several other witnesses at the grand jury sessions identified other officers involved too.
>
> They included former policemen Jerry Hill and Richard Moody and current officers Sgt. Robert Testa, patrolman Arnold Yanders, patrolman Michael Reed, and former patrolman Kenneth Cox, who is now a county deputy."

The article further stated, "Lt. Edwin McGee also testified about the Harding Pharmacy burglary, saying he came on the scene and found Hill, Roland, Massey and Officer Mike Reed inside but without their flashlights turned on." An accompanying article headlined "3 Deny Roles in Burglaries," stated "grand jury testimony summarized in the report said Reed was spotted inside a pharmacy with two officers who committed several burglaries."

On December 23, 1978, The Commercial News published another article written by Wilson concerning the investigation which summarized the grand jury's report by identifying the plaintiff as one of three current officers who had been named as participants in the misconduct. The article also repeated plaintiff's denial of the incident which had been quoted in one of the articles published two days earlier.

Carl Young wrote later articles concerning the investigation on March 6, 10, 28, and 29, 1979, which were also published by The Commercial News. These articles referred to the presence on the Danville police force of three current officers who had been mentioned in the grand jury report as participants in the misconduct. The officers were not specifically mentioned by name in these articles, but one of the articles did concern the city's decision to administer polygraph tests to a total of seven current police officers.

Plaintiff argues that the articles published by The Commercial News were libelous in that they portrayed the plaintiff as a burglar and being involved in a police burglary ring, and further, that the allegations contained in the articles published by the defendants were not supported by the grand jury investigation report.

The plaintiff's name was mentioned twice in the grand jury report. The first reference came in a summary of an Officer Miller's testimony in which Officer Miller described his suspicion of police

misconduct and the ensuing internal investigation of the problem. Officer Miller described a police burglary of the local American Legion Hall, an occurrence in which two other officers admitted their involvement. The grand jury report said:

"Officer Miller described the Legion burglary of December 21, 1970, and how Massey had fortuitously discovered an open window, failed to call it in, met with Officer Hill and returned to the Legion, leaving Miller posted outside. Miller testified that Massey had previously questioned him concerning whether upon finding a place broken into, would he accept something taken by Officers(.) Massey also asked him what his favorite liquor was; to which Miller replied, 'Scotch'. After all Officers who initially responded; including: Calvin Norman, Jerry Hill, Jack Roland and Michael Reed, had left, the owner was called to check out the premises. When they left the scene, Officer Miller found a bottle of Scotch under his side of the seat in their squad car."

The other reference to plaintiff came in the summary of Officer McGee's testimony, who had also taken part in the internal investigation. The grand jury report stated:

"Lt. Edwin McGee testified as to his responding to the August 25, 1971 burglary at Harding's Pharmacy where he found Officers Hill and Reed at the scene with Roland and Moody showing up later. His investigation of the scene, specifically including the watch case and shaver display showed nothing to be missing or disturbed, however, when he read the report submitted the next day by Hill, it showed watches, shavers and radios to have been taken along with a large amount of cash."

We acknowledge that the statements concerning the plaintiff in the articles published by The Commercial News and the statements concerning the plaintiff in the grand jury report are not parallel. However, the question is whether the statements, headlines and pictures published by The Commercial News were done so with actual malice.

■ Plaintiff initially argues that the actual malice standard for libels of public officials set forth in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726, does not apply to this situation as he was merely a patrol officer and cannot be construed to be a public official. We believe this question has already been decided in *Reed v. Northwestern Publishing Co.* (1984), 129 Ill. App. 3d 133, 471 N.E.2d 1071, wherein this court, when ruling upon an appeal of summary judgment for defend-

ant, determined that plaintiff Reed was a public official according to Illinois courts that have considered the issue. (See *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 239 N.E.2d 837.) We concur with the prior decision that Reed is a public official and thus subject to the public official standard of *New York Times.*

Our inquiry must therefore focus on whether the jury verdict in favor of the defendants is against the manifest weight of the evidence. *Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 359 N.E.2d 1071.

The jury found that although the December and March publications were false and defamatory, they were not published with actual malice. Thus, we must review the case and determine "whether the result reached below was one which is reasonable on the facts in evidence, not whether other conclusions might also have been reached." *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 423, 412 N.E.2d 447, 454.

In *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-280, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726, the Supreme Court held that the first amendment to the United States Constitution "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." The meaning of making a statement with knowledge is clear; however, determining what constitutes a reckless disregard of the truth requires further explanation. In *Garrison v. Louisiana* (1964), 379 U.S. 64, 74, 13 L. Ed. 2d 125, 133, 85 S. Ct. 209, 216, the Supreme Court defined reckless disregard as requiring proof that the defendant had a "high degree of awareness of their probable falsity." The Supreme Court further stated in *St. Amant v. Thompson* (1968), 390 U.S. 727, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323, 1325:

> "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."

(See also *Fogus v. Capital Cities Media, Inc.* (1982), 111 Ill. App. 3d 1060, 444 N.E.2d 1100.) Therefore, the defendants must have been more than merely negligent in reporting the falsehoods; there must have been some high degree of awareness or doubt with regard to the accuracy of the statements made.

Additionally, actual malice must be proved with convincing clarity. (*Catalano v. Pechous* (1980), 83 Ill. 2d 146, 419 N.E.2d 350, *cert.*

*denied,* (1981), 451 U.S. 911, 68 L. Ed. 2d 300, 101 S. Ct. 1981.) We interpret this to mean a higher standard of proof than the preponderance of the evidence test.

■ Plaintiff contends that all of the named defendants acted with reckless disregard of the truth. Plaintiff states that The Commercial News had conducted an independent investigation and had inside information from an undisclosed source concerning the police burglary ring; further, that Dan Olmstead and Les Smith, agents of the newspaper, knew that these inside sources were giving names of those policemen involved and that plaintiff was not one of them. Nonetheless, plaintiff states, when the December 21, 1978, article authored by Bob Wilson was published, plaintiff was listed as a policeman involved in the burglary ring, which caused the editor of The Commercial News concern as he knew that plaintiff was not involved.

Defendants maintain, however, that during 1977, Bob Wilson's only information about the police burglaries was that the grand jury investigation was pending and that Dan Olmstead and Les Smith were looking into the matter. He had no information concerning names, dates or places, and no such information had been supplied to him.

The evidence also indicates that when Wilson first saw the grand jury report, it was late in the afternoon of December 20, 1978. The following morning at 7:30 a.m., he was instructed to write a summary of the report, with a 10:30 a.m. deadline; further, on the morning of December 21, 1978, city editor Randy Kirk asked Wilson to check the content of the grand jury report with the State's Attorney's office. Wilson, as requested, interviewed an assistant State's Attorney responsible for preparing the grand jury report. The assistant State's Attorney told Wilson that if an officer's name had been included in the report, they were officers identified by two or more witnesses as being at the scene of two or more burglaries.

We believe that the jury was faced with a situation of whom to believe. After undoubtedly determining that the statements were false, the jury had to decide whether the defendants acted with reckless disregard when publishing the articles. At this point, the credibility of the witnesses must have been taken into account. The jury obviously believed the defendants and we do not consider the jury's decision to be against the manifest weight of the evidence, particularly when the plaintiff must prove his case by clear and convincing evidence.

■ With regard to defendant Carl Young and the articles that he

authored which appeared in The Commercial News on March 6, 10, 28, and 29 of 1978, we believe the trial court correctly dismissed Young as a defendant. The articles were devoid of plaintiff's name. Although Young relied upon the earlier articles authored by Wilson, we need not determine whether Young acted with actual malice because the articles do not libel the plaintiff. If plaintiff's name had been mentioned, we would then need to consider actual malice, but the articles were merely generalized statements concerning the incident and, at best, infer to one well read on the particular subject that plaintiff had any involvement. The only phrase that could be considered as regarding the plaintiff was, "three current officers." This phrase, without more, is not enough to base a libel action.

Plaintiff urges that numerous instructions were erroneously denied by the trial court upon defendants' objections and that those instructions would have appropriately instructed the jury concerning actual malice and the burden of proof to be applied. The trial court, however, formulated instructions regarding actual malice and the burden of proof. Upon review of those instructions, we believe that the trial court fairly, appropriately and adequately instructed the jury as to applicable law of the case. Any of the instructions proposed by plaintiff would have either been superfluous or inaccurate. We believe the instructions, taken as a whole, were proper.

Lastly, plaintiff raises objections to numerous alleged errors by the trial court and asks for reversal upon those grounds. We have reviewed each alleged error and without summarizing the numerous allegations are of the opinion the trial court was either not in error, or the error did not prejudice the plaintiff's case.

Accordingly, the decision of the trial court is affirmed.

Affirmed.

HEIPLE and WOMBACHER, JJ., concur.